Signed as modified by the Court.

**This order is SIGNED.**

**Dated: October 17, 2025**



**PEGGY HUNT**
**U.S. Bankruptcy Judge**

jas

---

*Prepared by:*

Matthew M. Boley (8536)
Jeffrey Trousdale (14814)
**COHNE KINGHORN, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
E-mail: mboley@ck.law
jtrousdale@ck.law

*Attorneys for* debtor-in-possession
APPLIED MINERALS, INC.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re:<br><br>**APPLIED MINERALS, INC.,**<br><br>Debtor. | Bankruptcy No. 24-25849<br><br>Chapter 11<br><br>Honorable Peggy Hunt |
|---|---|

**FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION
OF JOINT PLAN OF REORGANIZATION**

This matter came before the Court on October 15, 2025 at 9:30 a.m. and continued on October 16 and 17, 2025 (collectively, the "**Confirmation Hearing**") to consider confirmation of the *Joint Plan of Reorganization of (A) the Debtor, and (B) Halloysite Investment, LLC dated August 11, 2025* [Docket No. 178] (as modified by and in the form attached as Exhibit 1 to the to the *Order Confirming Joint Plan of Reorganization, being filed concurrently herewith* the "**Plan**" or the "**Confirmed Plan**")[1] proposed by Applied Minerals, Inc., debtor and debtor-in-

---

[1] The "**Confirmation Order**" means and refers to the separate *Order Confirming Joint Plan of Reorganization* issued and entered substantially contemporaneously with entry of these findings and conclusions. Exhibit 1 is a clean version of Dkt. No. 265-2 considered by the Court at the Confirmation Hearing.

possession (the "**Debtor**" and, from and after the Effective Date[2] of the Confirmed Plan, the "**Reorganized Debtor**") in the above-referenced chapter 11 bankruptcy case (the "**Case**"), and Halloysite Investment, LLC ("**Halloysite**") (together, the "**Plan Proponents**"), subject to modifications proposed in the *Motion for Entry of Order Approving Modification to Joint Plan of Reorganization and Approving Plan as Modified* [Docket No. 254] (the "**Motion to Modify**"), the notices of redline(s) filed as Docket Nos. 263 and 265, and additional modifications, corrections and clarifications discussed on the record during the Confirmation Hearing. Matthew M. Boley and Jeffrey Trousdale appeared on behalf of the Debtor. Ellen Ostrow appeared on behalf of Halloysite. P. Matthew Cox and David L. Pinkston appeared on behalf of Brady McCasland, Inc. ("**BMI**"), Ole Red H2S Scavenger, LLC ("**Ole Red**"), and BMI Minerals Company ("**BMC**") (collectively, the "**BMI Entities**"). Peter Kuhn appeared on behalf of the United States Trustee.

At the conclusion of the Confirmation Hearing, the Court orally announced findings of fact and conclusions of law on the record at the Confirmation Hearing, which findings and conclusions are incorporated herein by reference. Based thereon and in supplement thereto, the court further and additionally

**FINDS AND CONCLUDES**[3] as follows:

A.  <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>.  This Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. Confirmation of the Plan is a core proceeding under 28 U.S.C. §§ 157(b)(1). The Case arises under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). Further, the contested matter before the Court is a proceeding arising under the Bankruptcy Code and arising in this Bankruptcy Case and is specifically included in the list of

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Plan.
[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be considered findings of fact. <u>See</u> Fed. R. Bankr. Pro. 9014(c) and 7052.

"core proceedings" under 28 U.S.C. § 157(b)(2)(~~I~~L). This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

  B. <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Bankruptcy Court, including, without limitation, the orders and other matters of record that the Court specifically took judicial notice of during the hearing and/or referenced by docket number during its oral ruling, together with all pleadings, papers and other documents filed, all orders entered, and the transcripts of, and all minute entries on the docket indicating the evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Bankruptcy Case.

  C. <u>Transmittal and Mailing of Materials; Notice</u>.  All due, adequate, and sufficient notices of the Plan, the Confirmation Hearing, and the deadlines for voting on and filing objections to the Plan, were given to all known holders of Claims in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Disclosure Statement, Plan, and relevant ballots were transmitted and served in substantial compliance with §§ 1125 and 1126,[4] the Bankruptcy Rules and the Orders of this Court upon Creditors entitled to vote on the Confirmed Plan, and such transmittal and service were, and are, adequate and sufficient.  No other or further notice of the Confirmed Plan, the Motion to Modify or the Confirmation Hearing is or shall be required.

  D. <u>Solicitation</u>.  The solicitation of votes for acceptance or rejection of the Confirmed Plan complied with §§ 1125 and 1126,[5] Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other rules, laws and regulations.  Based

---

[4] Unless the context clearly provides otherwise, references herein to a "section" or "§" mean and refer to the referenced section of the Bankruptcy Code.

[5] Unless otherwise provided, all references to statutory sections in these Findings and Conclusions using the section symbol "§" are to the relevant sections of the Bankruptcy Code.

on the record before the Court in the Bankruptcy Case, the Debtor and Halloysite (collectively, the "**Plan Proponents**") have acted in "good faith" within the meaning of § 1125 and are entitled to the protections afforded by § 1125(e).

  E. <u>Distribution</u>.  All procedures used to distribute the solicitation materials to the applicable holders of Claims and to tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules and the orders at Docket Nos. 233, 240 and 242.

  F. <u>Creditors' Acceptance of Plan</u>.  The Confirmed Plan establishes ten Classes of Claims or Interests. All impaired Classes of Claims have accepted the Confirmed Plan. No Class of Claims has rejected the Confirmed Plan. All holders of Claims who affirmatively voted on the Confirmed Plan unanimously voted to accept the Confirmed Plan.

   i. All Classes of Claims in which ballots were returned [1, 2, and 10] voted unanimously to accept the Confirmed Plan.  Classes 3, 5, 6, 8, and 9 neither returned any ballots nor objected to confirmation.  As such, they are deemed to have accepted the Confirmed Plan.

   ii. Class 4 is unimpaired and is deemed to accept the Confirmed Plan.

   iii. Class 7 consists of existing Equity Interests, which are deemed to reject the Confirmed Plan because all equity interests are cancelled under the Confirmed Plan.

   iv. In summary, all Classes of Claims either have accepted by affirmative vote or are deemed to have accepted the Confirmed Plan.[6]

  G. <u>Plan Satisfies § 1129 and Must Be Confirmed</u>.  The Confirmed Plan must be confirmed because it meets all of the applicable requirements under § 1129(a).  The cram down requirements of § 1129(b) do not apply.

---

[6] See, e.g., In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988).

H.  **Plan Complies with Bankruptcy Code**. The Confirmed Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

   i.  **Proper Classification**. The Claims placed in each Class are substantially similar to other Claims in such Class. The Confirmed Plan properly classifies Claims. In addition to Administrative Expense Claims and Priority Tax Claims, which are not classified under the Confirmed Plan, the Confirmed Plan designates various separate Classes of Claims based on differences in their legal nature or priority. Further, valid business, factual and legal reasons exist for separately classifying the various Classes of Claims under the Confirmed Plan. Finally, the Classes do not unfairly discriminate between holders of Claims. Thus, the Confirmed Plan satisfies §§ 1122 and 1123(a)(1).

   ii.  **Specify Unimpaired Classes**. Class 4 is unimpaired as is designated as such under the Confirmed Plan. Thus § 1123(a)(2) is satisfied.

   iii.  **Specify Treatment of Impaired Classes**. Classes 1 through 3 and 5 through 10 are designated as impaired under the Confirmed Plan. Article 4 of the Confirmed Plan specifies the treatment of the impaired Classes of Claims and Interests, thereby satisfying § 1123(a)(3).

   iv.  **No Discrimination**. The Confirmed Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect thereto, thereby satisfying § 1123(a)(4).

   v.  **Implementation of Plan**. The Confirmed Plan provides adequate and proper means for its implementation, thereby satisfying § 1123(a)(5). Among other things, Articles 5 and 6 of the Confirmed Plan provide for: (a) the Plan Funding Transaction to be funded by Halloysite in the aggregate amount of $3,350,000 (including the $600,000 post-petition loan, which will be credit bid and/or forgiven as part of the

Plan Funding Transaction), (b) cash distributions to creditor's funded via the Plan Funding Transaction, (c) the cancellation of all existing stock and equity in the Debtor, (d) the issuance and distribution of New Stock as provided under the Confirmed Plan, (e) the vesting of the property of the Debtor and its chapter 11 bankruptcy estate in the Reorganized Debtor, (f) the funding of additional working capital to the Reorganized Debtor by Halloysite as part of the Plan Funding Transaction, and (g) the Reorganized Debtor's continuation of business operations and its ability to fill customer orders and satisfy obligations to customers.

      vi.    <u>Corporate Charter Provision</u>.  Article 5 of the Confirmed Plan specifies that the Reorganized Debtor's new organizational documents shall comply with § 1123(a)(6). Moreover, all New Stock issued pursuant to the Class 2 Stock Distribution includes ownership in the Reorganized Debtor with voting rights and a right to receive future profits distributions. Thus, the Confirmed Plan satisfies § 1123(a)(6).

      vii.    <u>Selection of Post-Confirmation Manager and Plan Administrator</u>.  The Disclosure Statement and the Confirmed Plan designate and disclose Christopher Carney as the President and CEO of the Reorganized Debtor and Geoffrey G. Scott as the initial director of the Reorganized Debtor. Further, provisions in the Confirmed Plan regarding the manner of selection of the Reorganized Debtor's directors and officers are consistent with the interests of Creditors and with public policy.  Thus, § 1123(a)(7) is satisfied.

      viii.    <u>Exculpation Clause</u>.  The "exculpation" provision in Section 12.5 of the Confirmed Plan complies with the provisions of the Bankruptcy Code, including § 1123(b)(6) which expressly contemplates that a plan under chapter 11 may "include any … appropriate provision not inconsistent with the applicable provisions of this title." As more fully described and explained by the Court during the Confirmation Hearing and as part of the Court's oral ruling, this provision of the Bankruptcy Code permits

exculpation clauses under ~~such as~~ Section 12.5 of the Confirmed Plan and, further, allows such protections to be extended to Halloysite and its Related Parties, including specifically Geoffrey Scott.  Based upon the evidence received at the Confirmation hearing, Halloysite and Mr. Scott have been actively involved in the case, including by working closely with the Debtor to formulate the Confirmed Plan. In addition, Halloysite and Mr. Scott have made a significant contribution to the success of the Confirmed Plan, which enjoys the unanimous approval of all creditors who voted, by providing a meaningful cash recovery for all unsecured creditors and the option of additional cash or stock distributions at the creditor's election. The exculpation provision was a necessary condition of the Confirmed Plan to induce Halloysite and Mr. Scott to provide this material support. At all times, Halloysite, Mr. Scott, and the Debtor and its representatives acted in good faith with respect to this case and the Confirmed Plan. In addition, the exculpation provided under Section 12.5 of the Confirmed Plan is appropriately limited in time.

ix. <u>Additional Plan Provisions</u>.  The Confirmed Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions respecting (a) the assumption and/or rejection of executory contracts and unexpired leases, (b) vesting in and the retention and enforcement by the Reorganized Debtor of claims under chapter 5 of the Bankruptcy Code and under applicable non-bankruptcy law, and (c) modification of the rights of holders of secured claims, thus satisfying the requirements of § 1123(b).

x. <u>Bankruptcy Rule 3016(a)</u>.  The Confirmed Plan is dated and identifies the Debtor and Halloysite as its proponents, thereby satisfying Bankruptcy Rule 3016(a).

I. <u>The Confirmed Plan and the Proponents Comply with the Bankruptcy Code</u>.  The Confirmed Plan complies with the applicable provisions of the Bankruptcy Code.  Likewise, the

4911-7922-2131, v. 6

Debtor and Halloysite have complied with the applicable provisions of the Bankruptcy Code. Thus, § 1129(a)(1) and (a)(2) are satisfied. Among other things:

    i.    the Debtor and Halloysite are proper proponents of the Confirmed Plan under § 1121(c);

    ii.    the Confirmed Plan complies, and Debtor and Halloysite have complied, generally with applicable provisions of the Bankruptcy Code; and

    iii.    the Debtor and Halloysite have complied with the applicable provisions of the Bankruptcy Code, including § 1125, the Bankruptcy Rules and orders of the Bankruptcy Court in transmitting the Confirmed Plan, the Disclosure Statement, ballots, related documents and notices, and in soliciting and tabulating votes on the Confirmed Plan.

J.    <u>Good Faith</u>. The Debtor filed the Bankruptcy Case in good faith and for a valid reorganizational purpose. Additionally, the Confirmed Plan is proposed by the Plan Proponents in good faith and not by any means forbidden by law, and therefore complies with the requirements of § 1129(a)(3). In determining that the Debtor filed the Bankruptcy Case in good faith and that the Confirmed Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Bankruptcy Case and the formulation of the Confirmed Plan. Among other things, the Court finds:

    i.    the Debtor filed this chapter 11 Case, and the Plan Proponents have proposed the Confirmed Plan, for a valid reorganizational purpose;

    ii.    neither this Case nor the Confirmed Plan was filed as a litigation tactic or for delay;

    iii.    the Debtor has been, and is, actively prosecuting this Case;

   iv. the Plan Proponents proposed the Confirmed Plan with the legitimate and honest purpose of, among other things, restructuring the Debtor's financial affairs and providing a meaningful return to all classes of creditors;

   v. the unanimous acceptance of the Confirmed Plan by all Classes of Claims is a strong indicator of the Plan Proponent's good faith;

   vi. the Confirmed Plan contemplates that the claims of creditors will be satisfied either by (a) cash distributions to the holders of allowed claims from the Plan Funding Transaction, or (b) in the event that holders of Class 2 Claims elect to receive New Stock, from the New Stock (in addition to cash being paid to such holders);

   vii. Halloysite has access to funds sufficient to fund the Plan Funding Transaction and to pay creditor claims as provided under the Confirmed Plan;

   viii. even for creditors who elect to receive New Stock, the Reorganized Debtor's operations may only result in "upside" for such creditors, as those creditors can exercise a "put option" requiring Halloysite to purchase their shares of New Stock after three years following the Effective Date;

   ix. this is not a case involving a single creditor;

   x. rather, there are multiple creditors;

   xi. there is a reasonable likelihood that the Confirmed Plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code;

   xii. creditor recoveries under the Confirmed Plan are ensured by the Plan Funding Transaction, and do not rely on the Reorganized Debtor's future business success;

   xiii. the Confirmed Plan is feasible, practicable and will enable the company to continue its business and pay its debts in accordance with the Confirmed Plan's provisions; and

xiv.   the Confirmed Plan is consistent with, and does not contravene, applicable non-bankruptcy law.

K.   Payments for Services or Costs and Expenses.  Any payments made or to be made under the Confirmed Plan for services or for costs and expenses in or in connection with the Bankruptcy Case prior to the Effective Date, including all fees and expenses incurred by Professionals, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4).

L.   Manager(s) of the Reorganized Debtor.  The Confirmed Plan and/or the Disclosure Statement identify Christopher Carney as the President and CEO of the Reorganized Debtor, and also identify Geoffrey Scott as its initial director. Further, the Plan Proponents have disclosed the amount and nature of compensation anticipated to be paid to Mr. Carney after the Effective Date – both in the Disclosure Statement and via evidence presented at the Confirmation Hearing, including Exhibit 4. The proposed service of Messrs. Carney and Scott as post-confirmation officer and director is consistent with the interests of the holders of Claims and with public policy.  Therefore, the Plan Proponents have complied with § 1129(a)(5).

M.   No Rate Changes.  The Confirmed Plan satisfies § 1129(a)(6) because the Confirmed Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

N.   Best Interests of Creditors Test.  The Confirmed Plan satisfies § 1129(a)(7) with respect to all Classes of Claims. The Confirmed Plan has been accepted by all Classes of Claims. Therefore, § 1129(a)(7) is satisfied as to all holders of Claims. Further and in any event, the Confirmed Plan provides that each holder of a Claim will receive or retain under the Confirmed Plan on account of their Claim property of a value, as of the effective date of the Confirmed Plan, that is not less than the amount such holder would receive or retain if the Case were

converted to chapter 7, and the Estate were liquidated by a chapter 7 trustee. As such, § 1129(a)(7) is satisfied.

  O. <u>Acceptance by Certain Classes</u>.  All Classes of Claims have accepted the Confirmed Plan, as noted above, thereby satisfying § 1129(a)(8). No Class of Claims has rejected the Confirmed Plan.

    i. Class 1 (Priority Claims) voted unanimously to accept the Confirmed Plan.

    ii. Class 2 (General Unsecured Claims) voted unanimously to accept the Confirmed Plan.

    iii. Class 10 (Convenience Claims) voted unanimously to accept the Confirmed Plan.

    iv. Class 3 (Leaf Capital Funding, LLC), Class 5 (Tharp & Associates), Class 6 (Miscellaneous Secured Claims), Class 8 (Subordinated Claims), and Class 9 (Subordinated § 510(b) Claims), neither returned any ballots nor objected to confirmation.  As such, they are deemed to have accepted the Confirmed Plan.  <u>See</u> <u>In re Ruti-Sweetwater, Inc.</u>, 836 F.2d 1263, 1267-68 (10th Cir. 1988) (holding that non-voting secured creditor who did not timely object to confirmation was deemed to accept the Confirmed Plan).

    v. Class 4 is unimpaired under the Confirmed Plan and is deemed to accept the Confirmed Plan.

    vi. Class 7 (Equity Interests) is deemed to reject the Confirmed Plan.

  P. <u>Treatment of Administrative Expense Claims and Priority Tax Claims</u>.  The Confirmed Plan satisfies the requirements of § 1129(a)(9).  Except to the extent the holder of a particular Claim agrees to a different treatment, the Confirmed Plan specifies that Administrative

Expense Claims (including professional compensation) and Priority Tax Claims shall be paid as mandated by § 1129(a)(9) (except to the extent that a holder agrees otherwise).

  Q. <u>Acceptance by at Least One Impaired Class</u>.  All Classes of Claims have accepted the Confirmed Plan as shown by Exhibits 3 and 10, and the acceptance of at least one of such accepting impaired Classes has been determined without including the votes of any insiders, thus satisfying § 1129(a)(10).

  R. <u>Feasibility</u>.  The Confirmed Plan is feasible and complies with § 1129(a)(11) because confirmation is not likely to be followed by a liquidation or the need for further financial reorganization of the Reorganized Debtor.  The Confirmed Plan offers a reasonable prospect of success and is workable.  The Confirmed Plan offers a "reasonable prospect" of success because the cash distributions under the Confirmed Plan will be provided by Halloysite via the Plan Funding Transaction, and do not depend upon the Reorganized Debtor's future economic success. The Plan Proponents have presented credible evidence that Halloysite will have sufficient cash to fund the Plan Funding Transaction and the cash distributions contemplated under the Confirmed Plan.  Further, the Reorganized Debtor will be relatively debt-free as of the Effective Date.  Its only ongoing financial obligations will be its payment obligations to the holders of Secured Claims in Classes 3, 4 and 5. In summary, the evidence shows that the Confirmed Plan offers a reasonable prospect of success, and is workable, and therefore satisfies § 1129(a)(11).

  S. <u>Payment of Fees</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to Section 2.2.3 of the Confirmed Plan, thereby satisfying § 1129(a)(12).

  T. <u>Continuation of Retiree Benefits</u>.  § 1129(a)(13) does not apply.  The Debtor is not obligated to pay any retiree benefits subject to § 1114.

U. <u>No Domestic Support Obligations</u>. The Debtor does not have any domestic support obligations. Therefore, § 1129(a)(14) is not applicable.

V. <u>Projected Disposable Income</u>. The Debtor is not an individual. Therefore § 1129(a)(15) is inapplicable.

W. <u>Transfers Will Comply with Nonbankruptcy Law</u>. The Confirmed Plan complies with § 1129(a)(16) because any transfers of assets to be made under the Confirmed Plan will be made in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

X. <u>The "Cram Down" Requirements of § 1129(b) Do Not Apply</u>. All Classes of Claims have accepted (or are deemed to have accepted) the Confirmed Plan. As such, § 1129(b) is not applicable.

Y. <u>No Other Plan.</u> No other chapter 11 plan is pending for confirmation before the Court in this Bankruptcy Case. Accordingly, § 1129(c) does not apply.

Z. <u>Principal Purpose of Confirmed Plan</u>. The principal purpose of the Confirmed Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Therefore, the Confirmed Plan satisfies the requirements of § 1129(d).

AA. <u>Small Business Case</u>. This Case is not a Small Business Case. As such, § 1129(e) is not applicable.

BB. <u>Solicitation</u>. As evidenced by the docket in this Case, including the *Notice of Hearing* [Docket No. 244], *Certificate of Service* [Docket No. 246], the Confirmed Plan, and the Disclosure Statement, appropriate ballots were transmitted and served on all parties entitled to copies of thereof (including all persons entitled to vote on the Confirmed Plan) in substantial compliance with the Bankruptcy Code, Bankruptcy Rules and relevant orders of the Court. It appears that all procedures used to distribute solicitation materials for the Confirmed Plan and to

tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, and all other rules, laws, and regulations.

CC. <u>Assumed Contracts</u>. The following are Assumed Contracts: (i) the executory contracts and unexpired leases delineated in section 8.1.2 of the Confirmed Plan.

DD. As to the Assumed Contracts (i) proper, timely, adequate and sufficient notice of the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1) and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6006 and 9014, (ii) such notice was good, sufficient and appropriate under the particular circumstances, (iii) no other or further notice of the assumption and assignment of the Assumed Contracts is or shall be required, and (iv) to the extent that notice was not good or sufficient under the particular circumstances as to Eco Material Technologies, Inc. d/b/a Boral Resources, LLC, such party has waived its right to object or receive further notice [Docket No. 262].

EE. The Debtor has demonstrated (i) that its determination to assume the Assumed Contracts is an exercise of its sound business judgment, and (ii) that the assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its Estate and its creditors.

FF. The Debtor (i) has cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, with the meaning of 11 U.S.C. § 365(b)(1)(B). Except for cure amount of $1,500 for the assumption of the DOGM Contract, no cure payment or other cure or compensation is, or shall be, required with respect to the Assumed Contracts.

GG. The Debtor has provided adequate assurance of its ability to perform in the future under the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(C).

HH. <u>Rejected Contracts</u>. Except for the Assumed Contracts, all other executory contracts and unexpired leases to which the Debtor is a party shall be, and hereby are, deemed rejected, excepting only any executory contract or unexpired lease that has been assumed pursuant to a Final Order of the Bankruptcy Court entered before the Effective Date. For the avoidance of doubt, the following executory contracts and/or unexpired leases shall be Rejected Contracts: (a) any and all executory contracts or unexpired leases between the Debtor and BMI Minerals Company, BMC Minerals Company, Brady McCasland, Inc., Richard Fox, Brady McCasland and/or any of their affiliates, including (without limitation, and solely to the extent that they are determined to be executory contracts or unexpired leases) (i) the Mining Operations Agreement, (ii) the Milling Operations Agreement, (iii) any ground lease, and (iv) any and all letter agreement(s); (b) any and all contracts between the Debtor and Durasonic Ltd.; and (c) any and all contracts with Wasatch Solutions LLC.

II. The Debtor has demonstrated (i) that its determination to reject the Rejected Contracts is an exercise of its sound business judgment, and (ii) that the rejection of the Rejected Contracts is in the best interests of the Debtor, its Estate and its creditors.

JJ. <u>The Proposed Modifications to the Plan Do Not Adversely Change Treatment of Creditors' Claims</u>. The proposed modifications as reflected in the Confirmed Plan do not adversely change the treatment of the claim of any creditor that has accepted the Confirmed Plan. Accordingly, under § 1127(a) and Bankruptcy Rule 3019(a), further notice is not required and the modifications reflected in the Confirmed Plan are considered accepted by all creditors that have accepted the original proposed plan [Docket No. 178].

KK. Accordingly, the Confirmed Plan shall be deemed accepted by all creditors who previously have accepted the Plan. <u>See</u> Fed. R. Bankr. P. 3019(a) (if "the proposed modification does not adversely change the treatment of the claim of any creditor … who has not accepted in

writing the modification, it shall be deemed accepted by all creditors … who have previously accepted the plan.").

LL.    <u>The Exculpation Clause Complies with Applicable Law</u>.  As discussed above, the exculpatory clause set forth in Section 12.5 of the Confirmed Plan and related definitions comply with applicable law and they can, and should be, approved.

MM.    In summary, the Confirmed Plan complies with, and the Plan Proponents have satisfied, all applicable confirmation requirements in § 1129, and the Confirmed Plan will be confirmed by entry of the separate Confirmation Order.

NN.    Further, the Motion to Modify is well taken, and shall be granted without further notice or opportunity for hearing for the reasons announced by the Court as part of its oral ruling.

------------------------------------- END OF DOCUMENT -------------------------------------

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION OF JOINT PLAN OF REORGANIZATION** shall be served to the parties and in the manner designated below:

**By Electronic Service**: I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CM/ECF System:

- **Matthew M. Boley**  mboley@ck.law, krenak@ck.law
- **Elise M. Carter**  elise.carter@foley.com
- **P. Matthew Cox**  mcox@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- **Carol Sue Crismon**  crismonlaw@gmail.com
- **Geoffrey S Goodman**  ggoodman@foley.com
- **Richard F. Holley**  rholley@spencerfane.com
- **Peter J. Kuhn**  Peter.J.Kuhn@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Ellen E. Ostrow**  eostrow@foley.com, ellen-ostrow-4512@ecf.pacerpro.com;docketflow@foley.com;geysa.peeler@foley.com
- **David L. Pinkston**  dpinkston@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- **Jeffrey L. Trousdale**  jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- **United States Trustee**  USTPRegion19.SK.ECF@usdoj.gov
- **Aaron M. Waite**  aaronmwaite@agutah.gov
- **Gary T Wight**  gwight@agutah.gov
- **Melinda Willden tr**  melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

**By U.S. Mail**: In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

☐ None

☒ If there are additional parties list the names and addresses of the additional parties.

Brian McGavin
Anderson Bradshaw PLLC
5296 S Commerce Dr
Salt Lake City, UT 84107

4911-7922-2131, v. 6

Elizabeth Oliver
11350 Montana Ave.
Los Angeles, CA 90049

Eric C. Peterson
1 N. Brentwood Boulevard
Floor 12
Saint Louis, MO 63105

☐     All parties on the Court's official case matrix.


                     /s/ Matthew M. Boley

4911-7922-2131, v. 6